Good morning, your honors. Kurt Claussen on behalf of the trustee, Robert McKenzie. May it please the court. This, too, is a case where the punishment simply doesn't fit the crime. Well, you know we're geared up, anyway. You've got to listen to the argument before. Given that, as this court has already recognized, that sua sponte dismissals are the harshest sanction available and should be imposed in only the most extreme circumstances, such circumstances are now present here. There is no misconduct which is egregious. There are no repeated violations of court orders. There's no willful disobedience. It is simply a single miss of a deadline caused by an error in judgment. The trustee's lead lawyer was diagnosed with brain cancer, immediately underwent whole brain radiation treatment, and died within three months. During that time, the trustee believed that there was a stipulation to extend the discovery deadlines, but inadvertently, that was not followed with the court. When the trustee realized that the discovery deadlines had passed and Mr. Lucia could no longer be his lead attorney, he found himself in the predicament of having to find new replacement counsel. And he made the decision that it would be better to have new counsel in place, asking the court for extended deadlines, as opposed to saddling new counsel with some maybe unrealistic deadlines. But counsel, this is what I'm – I understand, if you look at this from the standpoint of what was happening with the lawyers, that this is a sympathetic case and this was a tragic death of a prominent lawyer. Thank you, Your Honor. But at what point – there had been a trial date set. There were schedules. There were – am I correct? There had been a – from the court standpoint. There had been. There had been deadlines set and a time for trial. Yes, sir. At what point was the court apprised of these difficulties so that the court could make adjustments? Only, I think, perhaps weeks before the trial was to begin. Well, I think that – but, see, I think this wasn't a one-miss deadline in the situation. I think the court was looking at it more from a failure to prosecute in a general sense. And I think also, which would be a negative from your perspective, is that you never actually contacted the court. The court initiated a contact, right? I mean, you know, the deceased lawyer was diagnosed in February, passed away in May. And then there was no contact from your side at all until the court contacted, I believe, twice, and it was either October or November. Is that right? Am I right there? I understand that to be the case. I do know that the defendants weren't pushing it either. They didn't file a notice with the court saying, hey, the deadlines had passed. Where are we in this case? And so on and so forth. Your firm just fumbled the ball. Obviously, when the senior partner was very ill, nothing was done. They didn't – perhaps they hoped he would recover. But they had a duty, really, to put somebody in this place and get busy with it. And it didn't happen. I don't disagree with that, Your Honor. We are a small law firm. And when your senior partner, who was diagnosed five years earlier with lung cancer and had practiced valiantly for the remaining five years, we believed he, too, would beat this. But when we realized that he was no longer able to practice, we reviewed all of his cases. We are a four-member law firm, free without Mr. Lucia. And in valuating all of his cases, you know, it takes some considerable time. But when we got to this case and realized where we were at and that we, now only doing products liability cases, could not prosecute a commercial litigation, we advised the trustee we need to find new counsel. We didn't realize it would be so difficult. But the facts are that there aren't many law firms who are willing to take a debtor case on a contingency-only basis and advance all of the costs of litigation. So that did take a long time. The only problem that resulted here was a disruption in the court's docket, which we do apologize for. Weren't there problems before, though, on failure to prosecute? I mean, didn't the court point out that prior to the death of your partner, didn't the court point out that scheduling wasn't proceeding and discovery wasn't proceeding as it should?  We sent two stipulations to the court during the course of discovery saying that discovery had been slowed. In part, we were waiting for the defendants to come and review documents before depositions could begin. And I believe it was in December of 04 that we advised the court that an extension would be likely. And then the parties had reached an agreement to extend the deadlines. I'd like to take a moment to talk about the standard of review here, because I do remember from the prior argument, Judge Noonan, you were very concerned about the abuse of discretion standard. Right. It's firm and fixed conviction. I don't think that's the standard in this case. Well, you can look at some of the cases where that's used. While that might be the truth, it is uncontested that the district court never considered the five factors in the first order of dismissal and that in its initial second order of dismissal on a motion for reconsideration, it employed a heightened manifestly unjust standard. I find it persuasive that if a district court fails to make explicit findings in its initial order of dismissal, this court reviews the record independently, or de novo, if you will. And I think that a district court on a motion for reconsideration has no less obligation. It should have reviewed the entire file, de novo, and on an even playing field. Judge Schroeder, this is where your dissent, which has been highly touted, comes into play. If the district court had only done what it was required to do in the first instance, we would not have had to impose on these Article III judges and delayed the case even further. The true focus of a sua sponte dismissal are prejudice and availability of lesser sanctions. Once the trustee has given a non-frivolous reason for the delay, the burden of production shifts to the defendant to demonstrate some actual prejudice. The defendants have not met that burden. There is no evidence in the record, no affidavits, no deposition testimonies from any witness or party saying that they no longer remember the events or the documents are no longer available. In fact, the defendants themselves say they were not too concerned about the delays because all of the witnesses were either parties themselves or not adverse to the defendants, and, more importantly, that most of the witnesses have already been deposed in a collateral litigation about these events. So there's already. Well, you know, I understand that you'd like to have a principle, no harm, no foul, nothing ever happens, and maybe, but that doesn't really work that way. I guess what if, I mean, I'm sympathetic, but what I seem to be hearing from you is that this was, we should have some kind of double standard in prosecuting cases if it's a small firm versus a large firm or something like that because this was so burdensome. There's no way that the Court could have known any of that. Not a double standard. The Court does have to plan and has to, you know, do all kinds of things in order to accommodate, in order to make its schedule fit what it thinks is going to happen. Not a double standard, Your Honor. The point of a small firm is just to go to the level of misconduct, to show you that it wasn't egregious, it wasn't intentional or willful, it wasn't an attempt to gain some kind of a tactical advantage, it wasn't fraudulent. It was an honest mistake. I don't think the Court implied that. I didn't see any of that there. But I think the Court just felt that you weren't diligently prosecuting and it was just going on and on and on and on and nothing was happening. But again, does that... And that really the death was only a part of it. Had it only been, had that been the only issue, I think, because things weren't moving quickly before your partner passed away. But were they not moving solely as a result of the trustee's actions? Well, I think that there was a statement that was put in, in responding, supporting the motion to dismissal, that the defendants, what the defendants said was, defendants D&O Insurance Care has denied coverage for the action. Defendants were unable to commit significant finances to aggressive defense of this action. Rather, defendants intended to rely solely generally upon their previous testimony, their knowledge of the facts surrounding the subject transactions, and the fact that there are simply no other witnesses that could possibly corroborate or support plaintiff's allegations. Further, because the plaintiff has been essentially idle in this case to date, the defendants have not been required to aggressively defend the action. So what they're basically saying is it's not really that they were, I mean, it was kind of like, it's your responsibility to prosecute it. They didn't have a lot of money, so they're not, you know, that doesn't alleviate your duty to prosecute it. Depositions were noticed, Your Honor. They were intended to be taken. Defense counsel asked Mr. Lucia to postpone those until he had a time to review the documents in the trustee's possession. There were 20,000 pages of documents available, and they had been available for months. The defendants never made an attempt to come over and review the documents, yet they did ask that we postpone those depositions. So I don't know why the defendants should then benefit by that. It's sort of an estoppel argument. On one hand, you're asking us to wait. On the other hand, you want to hit us for that. Okay, that's a good point. There is simply no evidence of any prejudice, and by affirming here, we're basically saying that any violation of a discovery schedule is warranted for dismissal. I'd like to reserve. Let me take a moment real quick to address the argument on the motion for reconsideration, whether this appeal is timely. I think I addressed it adequately in my reply brief, but I want to point out that I have cited to the PPA litigation case, although for other propositions, but in that case at page 1242, it addresses this issue squarely on the head, where it says that the plaintiff brought a motion for reconsideration within ten days of the district court's entry of judgment, thereby tolling his time to file the notice of appeal. He then filed his notice of appeal within 30 days of the district court's denial of his motion for reconsideration. This comports with the rules and gives us jurisdiction. There is no contention that we did not timely file the motion for reconsideration. There is no contention that we did not timely file the appeal from the denial of the motion for reconsideration. Thank you. Thank you. Good morning. May it please the Court. Philip Rudd on behalf of the affiliates. Initially, I need to point out to the Court that one of the defendants, David Deeds, apparently filed for bankruptcy protection in November of 2006. I just learned that about 20 days ago or so. Frankly, I don't know if that bankruptcy petition is going to stick or not, but that could have an impact on where we are. Is there an automatic stay in place? There is an automatic stay in place with respect to Mr. Deeds. So, of course, if the Court affirms the district court, then it really has no impact on Mr. Deeds. If the Court reverses, then the trial will be stayed with respect to Mr. Deeds until that case is dismissed. I certainly don't want to – I certainly agree with the Court that Mr. Lucia's death was certainly tragic, but I also want to point out that while Mr. Lucia was the lead counsel here, there were at least four lawyers involved in this case and at least two different law firms. In fact, there were actually five lawyers and three law firms. There was the Wittenberry firm, there was Tony Lucia's firm, and then there was Mr. Collins, who was the bankruptcy counsel for the trustee. So I understand that Mr. Lucia's death was tragic, and I understand that it had an impact on the prosecution of this case, but the fact of the matter is that there were at least four other lawyers and two other law firms that were involved here that could have picked up the ball and carried it. I want to address just a few things, and I'm going to – Well, I think his point is he's saying it's certainly – if you listen to the last case, there were allegations of sort of people sandbagging and misconduct along it. That doesn't appear to be what people are claiming here. It's basically failure to prosecute. And when I asked him about that, you know, I read from what you filed, and he basically said, so if we're understanding of people, then you come back, you know, it's like no good deed goes unpunished. So there were, I noticed, some joint requests for extensions and things along those lines, and some did inure to your benefit. Sure, Judge, and actually you stole quite a bit of my thunder about what I was going to talk about. Sorry. That's okay. I would like to talk about that, And that's probably the main point that I want to talk about is this continual assertion by the plaintiff that the defendants are somehow culpable here or contributed to this delay. First, I'd like to point out that, and I believe Judge Noonan pointed this out earlier, it's the plaintiff's obligation to move a case along. It's not the defendant's obligation to move the case along. But, you know, on the flip side of it, we don't want to encourage lawyers to just be totally obstreperous and unreasonable and lack civility so that it's the scorch-the-earth litigation. Absolutely, Judge, and that wasn't the case here. I will admit, freely admit, that we were idled as well. We were idle, but we did not contribute to the delay. We did not actively contribute to the delay here. And let me put this in some framework as far as the perspective. First, the defendants here, from the very start of this case, asserted that this case was frivolous, not just that it was defensible, but it was frivolous, that there were no facts to support the case at all. So that's their mindset as we're operating through this case. The second thing is, as you pointed out, Judge, we didn't have any money. The insurance carrier had denied coverage, and we really had very little money to actively pursue this case. In fact, early on in the case, when we thought there was going to be some insurance coverage, we demanded to see immediately the documents that the complaint was based upon, because remember, this case started as a bankruptcy case filed in 2001. The counsel that brought this litigation was hired seven months prior to the complaint being filed. They had a long time to look at all these documents. We wanted to see those documents right up front. They told us they couldn't give them to us because somebody else had them, because National Data Cats had them. So we couldn't see them at all for several months. By the time they got around to us in August of 2004, which is about seven months after the case was filed, by that time we learned that we didn't have any insurance coverage and couldn't afford to be aggressive in this case. So we were sitting there, and that's why we didn't review the documents then. The third thing is the plaintiff here has the burden, but we had all the facts. We had all the facts. Four defendants here, the CEO, CFO, the controller, and the president. And the CEO was also the chairman of the board. They had all the facts. They knew what happened here. They knew that there wasn't a second set of books. They knew everything that happened in this company, and they knew that they had done nothing wrong. Prior to the bankruptcy case being filed, National Data Cats had deposed them on similar issues. And that deposition testimony completely exonerated those four defendants. It's the same issues that were raised in this lawsuit. So we had all the facts. Sure, they had all the documents, but we could have looked at the documents at any time, whether there was a discovery deadline or not. We could have looked at those documents after the discovery deadline because they were disclosed in the Rule 26 disclosure statement. We weren't worried about that discovery deadline because there was nobody for us to depose. We had all the facts. They had the documents, sure, but we could look at them at any time. But there was no discovery that we necessarily had to do, and that's borne out by their Rule 26 disclosure statement. Not a single adverse witness in that disclosure statement. Okay? So who are we going to depose? We don't have anybody to depose. We don't have any documents that we need to go out and find. They have them all, and we can look at them at any time. The fourth thing is the defendants repeatedly showed a lack of conviction to prosecute this case. They delayed two years after the bankruptcy case was filed before they filed it, and they filed it virtually on the eve of the statute of limitations. So that was a two-year delay from the date that the bankruptcy was filed until the date the complaint was filed. The second thing, and I alluded to it a minute ago, the plaintiff was either unable or unwilling to produce the documents to us until August of 2004, which was 11 months after the complaint was filed and five months after the pretrial conference in August or, I'm sorry, in April. So we wanted to look at the documents initially but couldn't because they couldn't produce them. They told us they had to do a privilege log, et cetera. But the fact is they couldn't give them to us. Another indication that they weren't prosecuting this case and had no intention to be active in this case is they were completely unresponsive to a simple, non-controversial issue about dismissing two of the plaintiffs or, I'm sorry, two of the defendants. Tony Coffin is the wife of Michael Coffin or was the wife of Michael Coffin. Tony Coffin and Michael Coffin were divorced in 1999. This action was brought or the allegations of this action were in 2001. There was no possible way that Tony Coffin could have been a defendant in this action because they weren't married at the time this occurred. We asked the plaintiff to dismiss Tony Coffin. We gave them a copy of the divorce decree. We prepared a stipulation to dismiss Tony Coffin. But you may be engaging in overkill because the district court really didn't dispose of this on the merits. Right. Right. No, what I'm trying to demonstrate, though, Judge, is that they had no interest in prosecuting this. They never responded to our simple request to dismiss this person. From our perspective, they had no interest in trying to move this case along. Now, I want to talk also about those December 2000 ---- And you mean by that when you say they? The plaintiffs. The parties, not just the lawyers. I'm sorry, the plaintiffs. Well, and you raise a good question, Judge. Well, the district court did say that the fault was with the lawyer, that it was with the plaintiffs. That's exactly correct, Judge. You're right. The lawyers didn't move this case along. But ultimately, this is a Chapter 7 trustee. This isn't just an individual who doesn't know anything about legal processes. This is a Chapter 7 trustee who knows about legal processes, who knows that they need to move a case along, who knows that one of his primary duties is to collect assets for this bankruptcy estate. And the plaintiff here did nothing to move the case along, did nothing to fire its counsel and find new counsel, did nothing to push its own counsel. So the plaintiff has some culpability here as well. And the district court said that. Absolutely, Judge. And I don't – and that is clearly not an abuse of discretion to make that finding. I want to talk for a minute about the December 2004 depositions, because, Judge Callahan, you seem to think that that was a good point. I disagree that it's a good point. And here's why. These deposition notices were sent out on December 13th. You'll recall that the discovery deadline was December 15th of 2005. These deposition notices – I'm sorry, it was January 15th of 2005. The deposition notices were sent out one month prior. Last minute, panicked reaction by the plaintiffs to get this case moving. At the very last minute. Case was filed in October of 2003. Didn't see a single piece of discovery out of the plaintiffs until November 2004. I'm sorry, December 2004. Thirty days prior to the discovery deadline. They tried to set the depositions for January 4th through 6th. Four depositions of the four defendants over a three-day period. Also during the holiday season. Notices of deposition were sent out December 13th for depositions on January 4th, 5th, and 6th. Discovery deadline is January 15th. This is clearly a panicked reaction to the impending discovery deadline. So this is 15 months after the case was filed. It's nine months after the scheduling order. One month prior to the discovery deadline. We can read this. Sure. But the point, Judge, is that you're right. We hadn't reviewed any of the documents. When we got these deposition notes – and I want to make sure you keep in mind where we were. We thought that this case wasn't going to be prosecuted. When the plaintiffs were contacted, or the appellants were contacted, saying we haven't heard anything for a long time, there was a trial set for December. There was a trial date for December of 2005, right? 2005, right. Right. So they were contacted. The court started about a month before. Hey, what's going on? We've got a trial coming up, right? Right. And that's a year after these depositions were noticed. Right. I understand that. And also, by the way, we didn't ask for this discovery deadline to be extended. This was a mutual agreement. This is something where the plaintiffs came to us and said, hey, you know what? I know we nosed up these depositions, but we need to really extend this deadline. In hindsight, we should have said no. In hindsight, we should have said, no, we're going to make you do these depositions. But we said at the time, okay, we'll agree to extend it to April 15th. Another very important factor is, okay, I'll concede that neither of the parties ever did the stipulation. And, frankly, I think it was the plaintiff's obligation to do that, and that's my recollection. But the fact is that even if a stipulation to that effect had been filed, the plaintiff still did nothing prior to April 15th. So even if a stipulation had been filed extending the discovery deadline to April 15th, it wouldn't have mattered because the plaintiff still did nothing. So that's where the defendants were. The defendants did not contribute to this delay. And if you read the Berry affidavit that was filed in connection with the original response to the order to show cause, and also I want the panel to recall that this wasn't a motion to dismiss by the defendants. This was a sua sponte order, an order to show cause by the court. I think we have all that from the court. Okay. I think we have all of that. You've answered my questions on what the defendant's place was in this. On a need-to-know basis, you don't have to tell us more than we need to know. Okay. The Berry affidavit supports, I believe, the defendant's perception that this case wasn't being prosecuted properly, that the defendants really didn't they were in such a state of flux that they really didn't pursue this. It also indicates that the other lawyers that were involved in this on the plaintiff's side didn't do anything when they should have. They knew as early as February of 2005 when Mr. Berry says that he went to Mr. Collins, who's the trustee's primary bankruptcy counsel, he went to Mr. Collins and said that he didn't want to continue pursuing, continue with the representation as co-counsel. And he said specifically that he had concerns about Mr. Lucia wanting to do all the depositions but then not arranging to do so. This is in February of 2005. Okay. I had concerns about the status of the case. This is Mr. Berry's affidavit. He then met with Mr. Lucia in March. And again, Mr. Lucia insisted that he wanted to do all the depositions. And Mr. Berry came away from that meeting deciding not to withdraw from the case, but suspected that it would be impossible for Mr. Lucia to do what he said he was going to do. This is in March of 2005. And still nothing had been said to the court. Still nothing had been said to the defendants or the defendants' counsel about what was going on. So we're still sitting there with the impression that this case isn't going to be prosecuted. Why? Because it's frivolous to begin with and also because the plaintiff isn't doing anything. So, and by the way, I did not know about Mr. Lucia's illness and death until June of 2005, until after Mr. Lucia had died when Mr. Collins called me. So as far as we can tell, the plaintiff is completely honest. Okay. And one of the important things that the district court, I think, focuses on is that the district court was never told any of this. Yeah. I think we do understand that. Yeah. Until November, until less than a month after two phone calls from the court. Because you don't have to use all your time if you don't want to. Okay. If you'd like for me to stop, I am going to stop. Are there any further questions? Would you like for me to address the alternative sanctions, lesser alternative sanctions issue? Because that is another one of the places where the plaintiffs spend a lot of time. Well, I agree. Is there anything that's not in your briefs, if it's anything different that we've read your briefs? No. No, I don't believe that there's anything that's not in our briefs with respect to the lesser alternative sanctions. I think that it's clear that the district court did address those, not explicitly, but did address those lesser alternative sanctions and found that there was nothing that would work. Okay. Thank you. Thank you. Thank you, Your Honor. I'd like to quickly talk about the contention that we did absolutely nothing to move this case along. Representing a trustee in bankruptcy is not like having your normal PI client come in the doors and tell you what happened. We were suing the authors and directors of a debtor. We could not ask them to come in and tell us what happened. We had a creditor telling us what they believed happened, and we had to review the documents in order to see if those would support them. We had to talk to independent witnesses, et cetera. So to say that we did nothing is a misnomer. We actually reviewed 20,000 pages of documents, pulled out what we believed were relevant to support our claims. We also had to do a privilege review. Then we made them available in August, and we agreed to postpone depositions until they had a chance to review them. Had we known in hindsight that we were going to wait until December and still have them come see the documents, we probably would have sent out deposition notices much earlier. But we relied upon their statement that they wanted to come out and review the documents before depositions were to occur. And we relied upon that. Now, as defense counsel noticed, this case also proceeded through a collateral litigation, if you will. It was a debtor's examination. The documents that we're talking about were not in the trustee's possession. They were in the possession of an entirely other law firm. And it's not like the trustee can walk in and say, give us those documents. All of that took time. And yet the defendants want to claim that this delay goes all the way back to the filing of the bankruptcy, the time you're allowed for the two-year statute of limitations. Sotomayor, you're arguing this to the wrong forum, I think, because the question is not so much what went on between you and your adversary, which I'm sure there may have been quite a bit. But the issue that troubles me is what was being, what action was being done to notify the court of what was occurring. And that this was diligently being pursued. And it appears that nothing. We notified the court in December, Your Honor, that both parties were slow in getting discovery going and we need an extension. The only thing that is attributed solely to the fault of the trustee is the failure to tell the court about Tony's death and the need to extend the discovery deadlines. We believe we had a discovery deadline in place, a stipulation that gets us through to April. It is that delay. But there is absolutely no prejudice stemming from that delay. None at all. Except for ‑‑ You've got a trial date. In the following December. In December, right? Yes. Because the death was in May of 2005. Yes. And there's a trial in December. And the court on its own had to reach out in what, November? We wish we had informed the court earlier. In hindsight, I would like to have. We never anticipated it would take so long to find new counsel. We wanted to do it at one time with new counsel in place. It seems to me that the district court did listen to all of this and did write extensively giving the reasons. And this is quite experienced. On a manifestly unjust standard, Your Honor, the court states it repeatedly in its order that a clear error of law and manifestly unjust. And then on its conclusion, it states, even if plaintiff had met the standard for motion for reconsideration. And, again, had we filed an appeal from the initial order of dismissal, this court would have reviewed it independently because the initial order of dismissal had no explicit findings that the court considered the five factors. And, in fact, the motion for reconsideration, the court acknowledges it never considered the five factors. So we would have had the benefit of this court's independent review, a de novo review. The district court should have given us that benefit. Also, when you do consider the five factors, then, if you need three of the factors to strongly support the court's abuse of discretion standard, you don't have them. They need to manage the docket, certainly weighs in favor of it. But then we go to the public's interest. Well, yeah, the public has an interest in expeditious litigation. The public also has an interest in bankruptcy of holding wrongdoers responsible for their misdeeds. Now, public policy favors on the merits. And then we go to the risk of prejudice. And that's all the district court found in its order. There is a risk of prejudice. There's a risk of prejudice in every delay. But once we state this in the non-frivolous reason, our case law tells us it goes to the defendant to show actual prejudice. And there is none. And, in fact, it's just the opposite. They state we weren't too concerned about it because there's deposition testimony already because we couldn't find any evidence to support the plaintiff's claims. So how are they prejudiced, then, by this delay? Okay. I'd like to briefly talk about he went to the merits of this and of the case. You know, it was a frivolous action and so on and so forth. I don't think that's proper for consideration here. But let me just say our law firm is not in the habit of taking cases on a contingency fee only basis and advancing significant costs of litigation on an impecunious debtor if the case has no merit. Thank you, Your Honor. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Noonan, Callahan